IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| John N. Atkinson,<br><br>     Plaintiff,<br><br>vs.<br><br>Farrell Automotive, Inc.,<br>d/b/a Farrell Chevrolet,<br><br>     Defendant. | Civil Action No. 7:09-3052-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment (doc. 43). In his amended complaint, the plaintiff alleges three causes of action against the defendant, his former employer: (1) breach of contract; (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended; and (3) retaliation in violation of Title VII.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff, who is an African-American male, previously worked as a car salesman for Dick Brooks Chevrolet in Spartanburg, and when the defendant purchased Dick Brooks Chevrolet in 2002, the plaintiff was retained as an employee. A little more than a year later, the defendant sent the plaintiff to Chicago for financial training. When he returned, he was promoted to the position of backup finance manager. Over the next few months, the plaintiff was demoted, but was then promoted again to the position of backup finance manager. When the backup finance position was eliminated due to the poor economy, the defendant offered the plaintiff a sales position, which he accepted.

The plaintiff began his position as a car salesman in April 2008. On May 16, 2008, he filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC"). The plaintiff claims that he had a "subject[ive] belief he was not promoted to a full position of being manager because of his African-American race" (pl. resp. m.s.j. 1) (citing pl. dep. 75). The parties opted to mediate the charge. The defendant claims that between the filing of his charge of discrimination and the scheduled mediation date, the plaintiff was insubordinate. In his deposition, the plaintiff admits that he had several unpleasant encounters with his supervisor, Stephanie Williams:

> Q: You admit that, before you were fired, there were several incidents between you and Ms. Williams?
>
> A: Yes. She did initiate conversations with me. Yes.
>
> Q: On several instances, she was displeased with your job performance?
>
> A: I think about twice or three times. Yes.

(Pl. dep. 71).

Ms. Williams testified in her affidavit that she observed insubordination by the plaintiff on several occasions (Williams aff. ¶ 2). She reported these incidents to the General Manager, Mike Knezevich (Knezevich aff. ¶ 2). In early July 2008, Ms. Williams asked the plaintiff to retrieve the stock number or numbers from vehicles on the lot (Williams aff. ¶ 3; pl. dep. 68). The plaintiff refused to do so and told Ms. Williams that she could find the information in certain dealership files (pl. dep. 68). Ms. Williams discussed the incident with Mr. Knezevich (Williams aff. ¶ 3; Knezevich aff. ¶¶ 2-3).

Mr. Knezevich called the plaintiff into his office, and the plaintiff admitted that he and Ms. Williams had words on more than occasion (Knezevich aff. ¶ 4). The plaintiff also told Mr. Knezevich that he had filed a charge of discrimination against the dealership. The plaintiff later stated that he was going to call his lawyer. Mr. Knezevich took the plaintiff's

2

statements to mean that the plaintiff felt he was immune from discipline because of the pending legal situation (Knezevich aff. ¶ 5). Mr. Knezevich indicated to Ms. Williams his support for the plaintiff's immediate termination (Williams aff. ¶ 6; Knezevich aff. ¶ 6). However, Ramiro Guillen, the dealership's Executive General Manager, instructed them not to terminate the plaintiff. According to Ms. Williams, she was unaware at the time of these events that the plaintiff had filed a charge of discrimination (Williams aff. ¶¶ 5-6). According to David Fisher, the defendant's Controller, the decision was made not to immediately terminate the plaintiff's employment because it was hoped that in mediation a resolution of the charge, including the question of the plaintiff's continuing employment, could be reached. Additionally, the defendant feared that if it terminated the plaintiff prior to mediation, he would amend his charge to add a claim for retaliation (Fisher aff. ¶ 4).

The plaintiff readily admits that Ms. Williams wanted him fired immediately:

A: Actually, Stephanie Williams told me I was fired.

Q: When did she tell you that?

A: She said it on the day that the incident -- no, this is how she phrased it. "I'll fire you," is what she told me, "I'll fire you."

Q: All right, and that happened at the time of the infraction, didn't it?

A: Right after it, yes. She says, "I'll fire you."

Q: And someone overrode her decision, didn't they?

A: Yes.

Q: But you don't know why?

A: I don't know why.

Q: So, in other words, Stephanie Williams wanted you fired and somebody saved your job?

A: She wanted me fired for something that I didn't do.

3

> Q: Stephanie Williams wanted you fired and somebody saved your job?
>
> A: Stephanie Williams did want me fired. Yes.
>
> Q: But somebody else saved your job?
>
> A: Somebody else intervened. Yes.

(Pl. dep. 102-103).

Mr. Knezevich and Ms. Williams issued a written reprimand to the plaintiff on July 3, 2008. The disciplinary form stated that the plaintiff was written up for "direct insubordination upon request from management" (pl. dep., ex. 4). The plaintiff admits that he refused to sign either the disciplinary form or the new pay plan subsequently distributed by management to dealership employees:

> Q: She asked you to sign the disciplinary form and you refused?
>
> A: That's correct.
>
> Q: You were asked by the general manager, Mike Mesovich [Knezevich], to sign the pay plan and you refused?
>
> A: Yes.

(Pl. dep. 71). The plaintiff also admits that during this same time period, he told employees, including Joe Jackson and Donovan Scruggs, that the dealership had racially discriminated against him (pl. dep. 59-60).

In the four months the plaintiff was a car salesman, one employee sold fewer cars than him, and another employee sold the same number of cars (def. reply, ex. A). During the last month of his employment, July 2008, the plaintiff ranked 8th out of 18 salesmen (*id.*).

The mediation of the plaintiff's SCHAC charge took place on August 7, 2008. Mediation was unsuccessful. On August 8, 2008, the plaintiff's employment was terminated.

4

The separation of employment form states the plaintiff was fired for insubordination and poor performance (pl. resp. m.s.j., ex. 1).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the

5

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

*Discrimination*

In his response to the motion for summary judgment, the plaintiff concedes that summary judgment is appropriate on his race discrimination claim, stating in pertinent part: "[T]his plaintiff cannot carry his burden of proof under our federal law to demonstrate the necessary proof to overcome Summary Judgment on the race discrimination claim . . ." (pl. resp. m.s.j. at 5). Accordingly, the defendant's motion should be granted as to this claim (first cause of action in amended complaint).[1]

*Retaliation*

In his second cause of action in the amended complaint, the plaintiff alleges that he was terminated from employment in retaliation for having filed a charge of discrimination with the SCHAC. In order to establish a *prima facie* case of retaliation, the

---

[1] The defendant also moves for summary judgment as to alleged acts of discrimination that are not mentioned in the charge and that occurred outside the 300 day limitations period. As the plaintiff concedes that his discrimination claim cannot survive summary judgment, the court will not address these arguments.

6

plaintiff must show that "'(1) []he engaged in a protected activity; (2) the employer took adverse employment action against [him]; and (3) a causal connection existed between the protected activity and the asserted adverse action.'" *Matvia v. Bald Head Island Mgmnt.*, *Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)). The antiretaliation provision of Title VII makes it unlawful "for an employer to discriminate against any ... employe[e]" who (1) "has opposed any practice made ... unlawful ... by this subchapter" (the opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (participation clause). 42 U.S.C. § 2000e-3(a).

The plaintiff can easily satisfy the first two elements of a *prima facie* case as he filed a charge of discrimination and was subsequently fired by the defendant. As for the causal connection, the plaintiff's employment was terminated nearly three months after he filed his charge and one day after the failed mediation. The Fourth Circuit Court of Appeals has held that "very little evidence of a causal connection is required to establish a *prima facie* case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a *prima facie* retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998), *abrogated on other grounds by Edelman v. Lynchburg College*, 228 F.3d 503 (4th Cir.2000); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three-month time period between protected activity and termination sufficient to satisfy the causation element of the *prima facie* case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir.1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). The court is persuaded that the plaintiff has created a genuine issue of fact as to the causation element of his *prima facie* case.

The defendant has come forward with a legitimate, nondiscriminatory reason for the plaintiff's termination from employment: his insubordination and poor performance.

7

Accordingly, the burden shifts to the plaintiff to show pretext. In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 146-47 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

The plaintiff argues that pretext can be shown by the following: (1) he was written up only once before his termination; (2) another employee, Rodney Bishop, was suspended for two days for walking off the job, and when he was later insubordinate, he received only a warning; (3) in the month prior to his termination, he ranked 8th out of 18 salespersons in number of sales; and (4) the temporal proximity between the failed mediation and his termination from employment.

The plaintiff argues that had the defendant followed its own policies, there would have been more documentation of his misconduct. The plaintiff contends that the employment policy: (1) is mandatory in its terms; and (2) required the defendant to complete a discharge form at the time of his July 3rd insubordination (pl. resp. m.s.j. at 11-12). However, even the plaintiff admits that none of the actions described in the policy at issue,

8

titled "Improving Performance Through Coaching, Counseling, Discipline or Dismissal," are "mandatory" (pl. dep. 17, 19-20; *see also* pl. dep., ex. 3). The plaintiff does not identify or quote any language in the employment policy that requires the defendant to complete a form as the plaintiff suggests. The policy itself states that immediate dismissal may result from economic conditions or workforce reductions, theft or dishonesty of any kind, physical violence, possession or use of illegal drugs or alcohol on the job, or "serious violation of any policy and procedure, safety standard, or performance standard as determined by management" (pl. dep., ex. 3). Furthermore, in similar circumstances, courts have rejected arguments that violation of employment policies can be used to establish pretext. *E.g., Smith v. Allen Health Systems, Inc.*, 302 F.3d 827 (8th Cir. 2002). In *Smith*, the court stated:

> Smith also argues that Allen's discipline policy required that she be given a written warning before she could be fired. She points to the Allen Associate handbook that describes a progressive discipline policy. However, the policy set forth in the Allen Associates' Handbook explicitly says, "*The Hospital reserves the right to immediately discharge associates without progressing through the first three disciplinary steps*." (emphasis in original). Thus, Allen does not appear to have deviated from its announced policy. Additionally, since Smith has pointed to no other employees who were treated differently under the progressive discipline policy, Allen's failure to give written warning does not tend to prove that the reason given for her firing was pretextual.

*Id.* at 835.

The plaintiff further tries to show pretext by comparing himself to another employee, Rodney Bishop. However, as argued by the defendant, when an employee in a Title VII case attempts to compare himself or herself to other employees, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to meaningful." *Lightner v. City of Wilmington, NC*, 545 F.3d 260, 265 (4th Cir. 2008). To be considered "similarly situated:

> "[T]he individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor,

9

> have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it."

*Holtz v. Jefferson Smurfit Corp.*, 408 F.Supp.2d 193, 206 (M.D.N.C. 2006) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Here, the plaintiff and Mr. Bishop are not similarly situated because they had different supervisors, *see Forrest v. Transit Management of Charlotte, Inc.*, No. 06-2245, 2007 WL 2348698, at * 2 (4th Cir. 2007) (employees are generally not similarly situated if different decision-makers are involved); they worked in different departments with different job responsibilities - the plaintiff was a car salesman, and Mr. Bishop was a service tech (pl. resp. m.s.j., ex. 5); and there is no evidence that Mr. Bishop, unlike the plaintiff, refused to sign the disciplinary form and other corporate documents (pl. dep. 71).

The plaintiff next argues that his job performance was not poor because in July 2008 his sales for the month placed him 8th out of 18 salesmen. However, as argued by the defendant, these numbers are taken out of context. In the four months the plaintiff was a car salesman, the plaintiff's sales tied for second to last of the 13 salesmen who were continuously employed during the same time period (def. reply, ex. 1).

Lastly, the plaintiff argues the fact that his employment was terminated the day after the failed mediation of his EEOC charge establishes pretext. However, even assuming the mediation date[2] rather than the date of the filing of his EEOC charge, which was three months prior to his termination from employment, is the appropriate date for consideration

---

[2]The defendant contends that the plaintiff focuses on the wrong event for purposes of his temporal proximity argument. The defendant argues that the plaintiff cannot rely upon his participation in mediation as a basis for his retaliation claim because Title VII's participation clause was not intended to operate in this manner. The defendant further argues the plaintiff "tries to shoe horn his claim into that part of the participation clause which is intended to protect third parties. His goal is to artificially shorten the time period assessed for purposes of his temporal proximity argument. Plaintiff, however, cannot make use of the portion of the participation clause which is intended for the benefit of third parties" (def. reply 8).

10

in a temporal proximity argument, that evidence is insufficient to establish pretext in a retaliation case. *Eadie v. Anderson County Disabilities*, C.A. No. 8:07-3406-HMH-WMC, 2009 WL 537637, at *11 n. 6 (D.S.C. 2009) ("'While temporal proximity is sufficient to meet the low burden required to establish a *prima facie* case of retaliation . . ., it is not alone sufficient to establish that employer's legitimate, non-discriminatory reason for discharge was pretext'") (quoting *Heady v. U.S. Enrichment Corp.*, C.A. No. 04-5762, 2005 WL 1950793, at *4 (6th Cir. Aug.16, 2005)); *Ragsdale v. Potter*, C.A. No. 8:05-142-RBH, 2006 WL 2827395, at *17 (D.S.C. 2006) (temporal proximity alone and on facts of case was insufficient to establish pretext from which a jury could infer retaliation); *see also Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993) (temporal proximity is "too slender a reed on which to rest a Section 1983 retaliatory discharge claim").

> As the Supreme Court stated in *Reeves,*
>
> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves*, 530 U.S. at 148-49. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* at 143 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Here, the only evidence supporting the plaintiff's retaliation claim are his own assertions and the timing of his termination of employment.[3] The defendant has presented evidence that the plaintiff was performing poorly in his position as a car salesman, he was insubordinate to his

---

[3] The plaintiff did not take any depositions in this case (def. m.s.j. 12 n.2) and has submitted no evidence contradicting the affidavits submitted by the defendant.

11

supervisor, his supervisor wanted to terminate his employment immediately and did not know at the time that he had filed an EEOC charge, and upper management made the decision to wait until after mediation in hopes that a resolution of the charge, including the question of the plaintiff's continuing employment, could be reached. Based upon the foregoing, summary judgment should be granted on the plaintiff's retaliation claim.

***Breach of Contract***

In his third cause of action in the amended complaint, the plaintiff alleges the defendant did not comply with its own policies in terminating his employment. Specifically, the plaintiff relies upon three documents: (1) the "Procedure for Completing coaching/ Counseling Summary (DF116C))," which outlines the manner in which a manager should complete a coaching or counseling form (pl. dep. 11-12, ex. 1); (2) the "Procedure for Completing Discipline Summary/Warning Notice (DF116D)," which outlines the manner in which a manager should complete a disciplinary form (pl. dep. 12-13, ex. 2); and (3) the "Improving Performance Through Coaching, Counseling, Discipline or Dismissal," which discusses when coaching, discipline, and dismissal are "appropriate" (pl. dep. 14-15, ex. 3). In his deposition, the plaintiff confirmed that the first two documents are instructions on how to fill out specific forms, but the third document sets forth policy (pl. dep. 14-15). That document provides:

1) coaching may be either verbal or written;

2) formal documentation of employee coaching is not required;

3) discipline will "often" be preceded by coaching or counseling, but some inappropriate behaviors will result in immediate discipline. Examples include serious or willful violations of policies and procedures and serious or "willful" actions contrary to company philosophy;

12

> 4) dismissal may follow unsuccessful coaching or discipline; and
>
> 5) immediate dismissal may result from economic conditions or workforce reductions, theft or dishonesty of any kind, physical violence, possession or use of illegal drugs or alcohol on the job, or "serious violation of any policy and procedure, safety standard, or performance standard as determined by management."

(Pl. dep., ex. 3).

The defendant argues that it complied with the policy, and thus the breach of contract claim fails. This court agrees. The policy permits discharge in two circumstances: (1) after failed coaching or discipline; and (2) upon the occurrence of any "serious violation of any policy and procedure, safety standard, or performance standard as determined by management." The defendants contend that both circumstances existed in this case. The plaintiff was discharged after failed coaching. He admits that prior to his discharge he received verbal discipline from, and was involved in multiple discussions with, Stephanie Williams, his supervisor. The plaintiff further admits that prior to his discharge he received a written disciplinary warning for insubordination. Thereafter, the plaintiff refused to sign both the written warning and the new employee pay plan. He also disparaged the defendant to fellow employees. The plaintiff's continued misconduct after verbal and written counseling authorized his dismissal under the policy and also constituted a serious policy violation as determined by management. Based upon the foregoing, the breach of contract claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 43) be granted.

December 8, 2010  s/Kevin F. McDonald
Greenville, South Carolina  United States Magistrate Judge

13