# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | | |
|---|---|---|
| John N. Atkinson, | ) | |
| | ) | C.A. No. 7:09-cv-03052-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Farrell Automotive, Inc., | ) | |
| d/b/a Farrell Chevrolet, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff brings this action alleging causes of action against his former employer for breach of contract, and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, as amended. This matter is now before the court for review of the Magistrate Judge's Report and Recommendation [Doc. 56], filed on December 08, 2010, in which he recommends that Defendant's Motion for Summary Judgment [Doc. 43] be granted as to all claims.

## STANDARD OF REVIEW

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those

1

portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

## FACTUAL AND PROCEDURAL BACKGROUND

The court incorporates by reference the Magistrate Judge's recitation of the facts. [Doc. 56, at 1-5].

## DISCUSSION

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation. [Doc. 62]. In his objections, Plaintiff challenges the Magistrate Judge's analysis of "pretext" under the burden shifting scheme of *McDonnell Douglas*, the Magistrate Judge's failure to consider Defendant's reasons for his termination in light of the "mixed motive" scheme of proof, and improper weighing of evidence as to his breach of contract claim.

### I.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine"

if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1)  give an opportunity to properly support or address the fact;
> (2)  consider the fact undisputed for the purposes of the motion;
> (3)  grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or
> (4)  issue any other appropriate order.

3

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce the existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## II.     Retaliation

The Magistrate Judge correctly stated the elements for pursuing a claim for retaliation under Title VII, and the court reiterates that discussion herein. To establish a *prima facie* case of retaliation, Plaintiff must "show that '(1) []he engaged in a protected activity; (2) the employer took an adverse employment action against h[im]; and (3) a causal connection existed between the protected activity and the asserted adverse action.'" *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)). Furthermore, "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a).

The court further notes that the Magistrate Judge correctly concluded that Plaintiff easily met the first two elements and submitted a genuine issue of material fact as to the third element, and that Defendant presented a legitimate, non-discriminatory reason for its termination of Plaintiff. [Doc. 56, at 7]. Plaintiff contends that he established that Defendant's legitimate reason for his termination was pretext because Defendant did not document his conduct or should have documented his conduct if Defendant was actually going to terminate him for poor performance. [Doc. 48, 11-12]. The Magistrate Judge concludes, based on Plaintiff's admissions that "none of the actions described in the policy at issue, titled 'Improving Performance Through Coaching Counseling, Discipline or

4

Dismissal,'" are "mandatory." [Doc. 56, at 8-9]. The Magistrate Judge also found that Plaintiff failed to identify language in the employment policy requiring Defendant to complete forms in connection with disciplinary action. [Doc. 56, at 9]. Furthermore, the Magistrate Judge noted that "courts have rejected arguments that violation of employment policies can be used to establish pretext." [Doc. 56, at 9] (citing *Smith v. Allied Health Sys., Inc.*, 302 F.3d 827 (8th Cir. 2002)). The court adopts the Magistrate Judge's analysis and conclusion with respect to Plaintiff's arguments in this regard.

Plaintiff also objects that the Magistrate Judge "did not take into consideration all of Plaintiff's stated reasons of 'pretext.'" [Doc. 62, at 1-2]. But Plaintiff's objection in this regard is puzzling because the Magistrate Judge specifically addressed the four factors upon which Plaintiff relies in support of his claim that Defendant's legitimate reason was pretext. [Doc. 62, at 1-2]. Plaintiff lists the four factors as,

> (1) he was written up only once before his termination; (2) another employee Rodney Bishop, was suspended for two days for walking off the job, and when he was later insubordinate, he received only a warning; (3) in the month prior to termination, he ranked 8th out of 18 salespersons in number of sales; and (4) the temporal proximity between the failed mediation and his termination of employment.

[Doc. 62, at 2]. Contrary to Plaintiff's assertions, the Magistrate Judge addressed and discounted each of the four factors listed above. [Doc. 56, at 8-11]. The court adopts the Magistrate Judge's analysis and conclusions with respect to Plaintiff's arguments in this regard.

Plaintiff next objects to the Magistrate Judge's conclusion that the fact that Plaintiff was fired one day after the mediation is not sufficient to establish pretext. [Doc. 56, at 10]. Plaintiff argues that the Magistrate Judge did not take into account the following statement by Defendant as revealed in Defendant's Motion for Summary Judgment:

> The reason for the intervention is simple. As David Fisher, the dealership's controller, stated in his affidavit, the dealership chose to refrain from firing Plaintiff because they feared doing so would simply prompt Plaintiff to sue the company for retaliation. (Fisher Aff. at ¶ 4). The dealership hoped to resolve all matters,

5

> including Plaintiff's continued employment, at the upcoming mediation, and thereby avoid protracted litigation. *Id.* In other words, the filing of Plaintiff's charge of discrimination did not cause Plaintiff to lose his job – instead, it actually saved his job for an additional three months.

[Doc. 62, at 2]. Plaintiff argues that these statements show that "defendant waited until mediation and once it failed then terminated Plaintiff." [Doc. 62, at 2]. Plaintiff also contends that if Defendant truly had a legitimate non-discriminatory reason for terminating him, it would have done so soon after the disagreement in early July that he had with his supervisor. [Doc. 62, at 2] In support of his conclusion, the Magistrate Judge cites four cases holding that temporal proximity, while enough to establish a prima facie case of retaliation, is not enough to establish that Defendant's legitimate reason was pretext. [Doc. 56, at 10-11] (citing *Eadie v. Anderson County Disabilities*, C.A. No. 8:07-3406, 2009 WL 537637, at *11 n. 6 (D.S.C. March 4,2009); *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993); *Heady v. U.S. Enrichment Corp.*, 146 Fed. App'x 766, 770-71 (6th Cir. 2005); *Ragsdale v. Potter*, C.A. No. 8:05-142, 2006 WL 2827395, at *17 (D.S.C. Sep. 28, 2006)).

Plaintiff next objects that the Magistrate Judge failed to apply the mixed-motive scheme available to Plaintiffs in Title VII cases where there is evidence of both legitimate and unlawful motives for an employer's termination decision. [Doc. 62, at 2-4].

According to the United States Supreme Court,

> "[M]ixed-motives" cases, such as the present one, are different from pretext cases such as *McDonnell Douglas* and *Burdine*. In pretext cases, "the issue is whether either illegal or legal motives, but not both, were the 'true' motives behind the decision." In mixed-motives cases, however, there is no one "true" motive behind the decision. Instead, the decision is a result of multiple factors, at least one of which is legitimate.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 260 (1989) (internal citation omitted).

To prevail under the mixed-motive model, Plaintiff must show, by a preponderance of the evidence, that an employer's illegal retaliation "played a motivating part in an employment decision . . . ." *Kubicko v. Ogden Logistics Servs.*, 181 F. 3d 544, 552 (4th Cir. 1999) (citing *Price*

6

*Waterhouse*, 490 U.S. at 244-45). Under the *Price Waterhouse* rule as it applies to retaliation cases, once a plaintiff makes this showing, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not allowed the illegal factor to play such a role."[1] *Kubicko*, 181 F.3d at 552 (citing *Price Waterhouse*, 490 U.S. at 244-45). Here, Plaintiff argues that the fact that Defendant decided not to fire him soon after the July 3, 2008, incident is evidence of an unlawful retaliatory motive. [Doc. 62, at 1-3 ]. In its defense, Defendant points to several legitimate, non-discriminatory reasons for terminating Plaintiff. [Doc. 65, at 5-6]. First, Defendant points to the fact that after filing his complaint with the Equal Employment Opportunity Commission ("EEOC") on May 16, 2008, Plaintiff was, on a number of occasions, insubordinate. [Doc. 56, at 2]; [Doc. 43-6, at 1]. Plaintiff admits as much in his deposition when he states that "about [two] or three times" his supervisor, Ms. Williams, had indicated her displeasure with his performance. [Doc. 56, at 2]; [Doc. 43-4, at 8]. On this same point, Ms. Williams had also "observed insubordination by Plaintiff on several occasions." [Doc. 56, at 2]; [Doc. 48-7, at 1, ¶ 2]. In early July 2008, Ms. Williams "asked Plaintiff to retrieve the stock numbers from vehicles on the lot." [Doc. 56, at 2]; [Doc. 43-7, at 1, ¶ 3]. But Plaintiff refused to comply. [Doc. 56, at 2]. According to the Magistrate Judge and Plaintiff's deposition testimony, Plaintiff admitted that Ms. Williams wanted to fire him "on the day" after Plaintiff's refusal to comply with her instructions. [Doc. 56, at 3]; [Doc. 43-4, at 102-103]. Soon after refusing these

---

[1] Originally, a defendant's showing of a legitimate, non-discriminatory reason for its adverse action entitled him to an affirmative defense under the *Price Waterhouse* framework in Title VII cases. *Price Waterhouse*, 490 U.S. at 242. However, in 1991 Congress passed § 107(a) of the Civil Rights Act of 1991. *See Kubicko*, 181 F.3d at 552 n.7. According to § 107(a): "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Kubicko*, 181 F.3d at 552 n.7 (citing 42 U.S.C. § 2000e-2(m)). Section 107(a) overruled *Price Waterhouse* to the extent it disallowed any recovery on a plaintiff's part if the defendant came forward with a legitimate, non-discriminatory reason. *Id.* Instead, a plaintiff now enjoys limited recovery. *See Id.* However, § 107(a) includes within the language of its text only "race, color, religion, sex, or national origin" as "motivating factors for any employment practice . . . ." *See id.* (citing 42 U.S.C. § 2000e-2(m)). Retaliation is excluded. *See id.* Consequently, in Title VII retaliation cases, a defendant who establishes by a preponderance of the evidence that it would have made the same decision because of legitimate, non-discriminatory reasons enjoys an affirmative defense and thus avoids liability. *Id.*

7

requests, Plaintiff was asked to sign a disciplinary form, but he refused. [ Doc. 56, at 4]; [Doc. 43-4, at 8]. He was also asked to sign the pay plan, and again he refused. [Doc. 56, at 4]; [Doc. 43-4, at 8]. Defendants present, as legitimate, non-discriminatory reasons for Plaintiff's termination, these acts of insubordination in addition to the fact that Plaintiff performed poorly in his job as a car salesman. [Doc. 52-1, at 1-3].

Plaintiff argues that despite these facts, the record establishes that Defendant retaliated against him because they chose not to fire him in early July soon after his admittedly insubordinate conduct but instead immediately after the mediation that took place on August 7, 2008. [Doc. 62, at 3]. According to Plaintiff, "Defendant's termination of this Plaintiff the day after failed mediation is a very strong inference of Defendant's 'motivating factor' which has been given no weight in the R & R." [Doc. 62, at 3]. In response, Defendant argues that the statement that Plaintiff cites "establishes that the decision to discharge Plaintiff was made before, rather than after mediation." [Doc. 65, at 4]. In support, Defendants point to the fact that Plaintiff's supervisor did not know of the EEOC charge when she recommended Plaintiff's immediate discharge on the grounds of insubordination and poor performance. [Doc. 43-7, at 2, ¶ 2]. The general manager agreed with this recommendation. [Doc. 43-5, at 2, ¶ 6]. And as the Defendant's controller David Fisher explained, the dealership was within its rights to terminate Plaintiff for his acts of insubordination alone. [Doc. 43-6, at 1, ¶ 4]. According to Mr. Fisher, "the Dealership hoped, that in mediation, it could reach a global resolution of the charge including the question of Atkinson's **continuing employment**." [Doc. 43-6, at 1, ¶ 4] (emphasis added). In their Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, Defendant argues that this "global resolution" might provide "an opportunity to attempt amicable resolution, and possibly prevent the need for the instant litigation." [Doc. 65, at 4]. Defendant continues by asserting that "[t]he dealership hoped that Plaintiff would agree to resign his employment as a part of any settlement agreement. The dealership

8

elected to delay the effective date of discharge in hopes of avoiding additional costly litigation." [Doc. 65, at 4]. Defendant's explanation is not persuasive, and it does not overcome the fact that Plaintiff raises a genuine issue of material fact with respect to whether Defendant would have fired Plaintiff despite their alleged unlawful motives. The court recognizes that Plaintiff did not take depositions or submit affidavits of his own, but Plaintiff does point to Mr. Fisher's statement in his affidavit that Plaintiff's "continuing employment" would be discussed at the mediation. [Doc. 62, at 2]; [Doc. 43-6, at 1, ¶ 4]. When viewed in a light most favorable to Plaintiff, as this court must, this statement raises genuine issues whether Plaintiff's continued employment was conditioned on the outcome of the mediation and whether Defendants might have been willing to allow Plaintiff to remain employed at the dealership despite their repeated claims that they always intended to terminate him after his insubordinate behavior in early July 2008.

### III.   Breach of Contract

The Magistrate Judge concluded that summary judgment in favor of Defendant on Plaintiff's breach of contract claim was appropriate because the employer terminated Plaintiff within the letter of the policy. [Doc. 56, at 13]. The Magistrate Judge found that "the policy permits discharge in two circumstances: (1) after failed coaching or discipline; and (2) upon the occurrence of any 'serious violation of any policy and procedure, safety standard, or performance standard as determined by management.'" [Doc. 56, at 13]. According to the Magistrate Judge, "[t]he plaintiff was discharged after failed coaching . . . [the plaintiff] admit[ted] that prior to his discharge he received verbal discipline from . . . his supervisor . . . and further admits that prior to his discharge he received a written disciplinary warning for insubordination." [Doc. 56, at 13]. The Magistrate Judge continued, "the plaintiff's continued misconduct after verbal and written counseling authorized his dismissal under the policy and also constituted a serious policy violation as determined by management." [Doc. 56, at 13]. Based on the Magistrate Judge's analysis, this court grants summary judgment for Defendant on this claim.

## CONCLUSION

For the foregoing reasons, this court adopts, in part, the Magistrate Judge's Report and Recommendation. [Doc. 56]. The court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 43] with respect to Plaintiff's claims of race discrimination and breach of contract. [Doc. 56, at 6, 13]. The court **DENIES** Defendant's Motion for Summary Judgment [Doc. 43] with respect to Plaintiffs claim for retaliation. [Doc. 56, at 12].

**IT IS SO ORDERED**.

s/ J. Michelle Childs
United States District Judge

March 15, 2011
Greenville, South Carolina